## Legal Memorandum in Support

### Ineffective Assistance of Counsel as to Advice to Plead Guilty

To demonstrate ineffectiveness of counsel, the defendant must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial." *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 690, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).

Under the prejudice prong of the *Strickland* test, "a defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Harfst*, 168 F.3d 398, 402 (10th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, this requires the defendant to "show that he would not have pled guilty had his attorney performed in a constitutionally adequate manner." *Miller v. Champion*, 262 F.3d 1066, 1068 (10th Cir. 2001). In making this determination, "it is not necessary for the defendant to show that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel." *Id.* at 1069.

An attorney's effective assistance includes a duty to investigate. "The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) (internal quotation marks omitted). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (internal quotation marks omitted).

A claim of ineffective assistance of counsel requires proof that counsel's representation

1

was not objectively reasonable and that the result of the proceeding would have been different but for counsel's unprofessional errors. *Hill v. Lockhart*, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985). On a claim of ineffective assistance based on the failure to advise a defendant of a potential defense, "resolution of the prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. at 59.

Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change her recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *Ulrey v. Zavaras*, 483 Fed. Appx. 536, 538, 2012 U.S. App. LEXIS 11468, *1, 2012 WL 2045769.

In this case, counsel failed to investigate the possibility of an entrapment defense and how Mr. Hall was particularly vulnerable to Government influence and specifically, was unable to resist the influence of Government Agent, Michael Adam Windecker aka "Mickey." (See attached).

**Entrapment Defense**

To raise an entrapment defense, the defendant must present some evidence that he or she was: (1) induced to commit a crime by a Government agent; and (2) not otherwise predisposed to commit the crime. *United States v. Mathews,* 928 F.3d 968 (10th Cir. 2019). An individual who has been hired by the Government as an informant is a Government agent for entrapment purposes.

2

*Sherman v. United States,* 78 S. Ct. 819 (1958).

The Tenth Circuit's Pattern Jury Instructions instruct that a defendant was entrapped if:

- The idea for committing the crimes originated with Government agents, and
- The Government agents then persuaded or talked the defendant into committing the crime(s), and
- The defendant was not already willing to commit the crimes.

The Instruction further clarifies that when a person has no previous intent or purpose to violate the law, but rather when a person already has the readiness and willingness to violate the law, and the officers merely provide the defendant with an opportunity to commit the crime and do so even by disguise or ruse, there is no entrapment.

Entrapment, as a matter of law, exists only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act. *United States v. Nguyen*, 413 F.3d 1170, 1177-78 (10th Cir.2005).

To raise a defense of entrapment, two elements must be shown. *U.S. v. Hildreth, 485 F.3d 1120 (10th Circ. 2007).*

a) First, government agents must have induced the defendant to commit the offense,
b) Second, the defendant must not have been otherwise predisposed to commit the offense, given the opportunity. Once the defense is raised, the government must prove beyond a reasonable doubt that the defendant was not entrapped. *Id.*

To do this, a defendant's predisposition, a defendant's inclination to engage in the illegal activity for which he has been charged, is used to establish the defendant was not entrapped. Evidence of predisposition includes similar prior illegal acts, or it may be inferred from the defendant's desire for profit, his eagerness to participate in the transaction, his ready response to

3

the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity. Moreover, predisposition must "be viewed at the time the government agent first approached the defendant," but "inferences about that predisposition may be drawn from events occurring after the two parties came into contact. *Hildreth, F.3d 1120.*

A multi-factor test was established to determine the issue of a defendant being predisposed to commit the crime in relation to the entrapment defense. In *United States v. Gurrola*, the defendants were Mexican bankers who were arrested in a money laundering scheme. *United States v. Gurolla*, 333 F.3d 944 (9th Cir. 2003). On appeal, one of the more significant arguments made by the defendants was presenting an entrapment defense. *Id*. The court held that the five factors relevant to predisposition include: the character or reputation of the defendant, whether the Government made the initial suggestion of criminal activity, whether the defendant engaged in the activity for profit, whether the defendant showed any reluctance, and the nature of the government's inducement. *Id*. The court also held that the most important factor of the five is the defendant's reluctance to engage in criminal activity. *Id*.

**Vulnerability to Entrapment**

In *United States v. Sandoval-Mendoza*, the defendant claimed he suffered from a brain tumor that made him susceptible to suggestion and preyed upon his weakness. *United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006). Two Government informants suggested that defendant sell them drugs. *Id*. The Appellate court ruled that the district court erred in excluding medical expert testimony regarding the defendant's brain tumor because evidence of a medical condition that renders a person especially vulnerable is highly relevant to an entrapment defense. *Id*. Additionally, the court found that the jury should be able to determine whether the government's informant induced a vulnerable and suggestible man to break the law. *Id*.

Similarly, in *United States v. Mosely*, the defendant was convicted for distributing and possessing with intent to distribute heroin. *United States v. Mosley*, 496 F.2d 1012 (5th Cir. 1974). His sole defense was entrapment. *Id*. The defendant attempted to introduce evidence that he had a head injury and brain surgery sometime prior to the time of this offense, which resulted in a changed personality and was more easily swayed by others. *Id*. All evidence relating to his head injury was excluded by the trial court. *Id*. The Appellate court held that a head injury, a changed personality, and a resulting tendency to be easily swayed by others are relevant factors to be considered on the issue of predisposition. *Id*.

Mr. Hall has long ago been diagnosed with mental illness and at the time of the crime, in 2020, was on various medications and under the care of mental health professionals and also had suffered a recent head injury in May 2020. As such, Mr. Hall was particularly vulnerable to entrapment.

His trial counsel failed to investigate his background and advised him to plead guilty without sufficient investigation into the Government agent Windecker or the defense of entrapment as it pertained to Mr. Hall and Windecker's influence over Hall to get him to commit the crime. As such, Mr. Hall's counsel was ineffective, and he should be able to have his conviction set aside, and the guilty plea withdrawn.

**Outrageous Governmental Misconduct/Prosecutorial Misconduct**

The Government's use of an undercover operative, Windecker, with the specific purpose of disrupting protected free speech and assembly constitutes an abuse of power and Government Outrageous Misconduct. The outrageous conduct defense is an outgrowth of the entrapment doctrine and shares some similarities. *United States v. Russell*, 411 U.S. 423, 428-30, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973). While entrapment focuses on the defendant's readiness to commit crimes, the outrageous conduct defense focuses on the government's conduct. *Mosley*, 965 F.2d at

5

909. Accordingly, "[t]he cases on outrageous conduct suggest two factors that form the underpinnings for most cases where the outrageous conduct defense has been upheld: government creation of the crime and substantial coercion." *Id*. at 911. While "no specific rule has been formulated to determine when the involvement of the government in a criminal enterprise becomes excessive," *id*., "[t]he outrageous conduct defense . . . is an extraordinary defense that will only be applied in the most egregious circumstances. In order to prevail, the defendant must show that the challenged conduct violated notions of fundamental fairness and is shocking to the universal sense of justice." *United States v. McKissick*, 204 F.3d 1282, 1294 (10th Cir. 2000) (internal quotation omitted).

In addressing allegations of outrageous conduct, "the relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." *See United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996), *United States v. Mosley*, 965 F.2d 906, 909 (10th Cir. 1992).   Here, the Government's conduct offends the universal sense of justice.

### *Brady/Giglio* Violations

In *Brady*, the Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. From that holding, and the line of cases that followed, we distilled three elements of a *Brady* claim "(1) the prosecutor suppressed the evidence; (2) the suppressed evidence was favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) prejudice ensued because the suppressed evidence was material." *Simpson v. Carpenter*, 912 F.3d 542, 569 (10th Cir. 2018); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that impeachment evidence "falls

within" *Brady*). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). And the "reasonable probability" standard is met by a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435., *Andrew v. White*, 62 F.4th 1299, 1327 (10th Cir. 2023).

Beginning with its seminal decisions in *Napue v. Illinois*, 360 U.S. 264 (1959), and *Brady v. Maryland*, 373 U.S. 83, 83 (1963), the Supreme Court established the principle that criminal convictions obtained by presentation of known false evidence or by suppression of exculpatory or impeaching evidence violates the due process guarantees of the Fourteenth Amendment. "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotations omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269. The government's obligation to disclose exculpatory evidence does not turn on an accused's request. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). "In order to comply with *Brady*, . . . the individual prosecution has a duty to learn of any favorable evidence known to the others acting on the government's behalf." *Id.* at 281 (quotation marks omitted). Under this framework, no distinction is recognized between evidence that exculpates a defendant and "evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest." *United States v. Bagley*, 473 U.S. 667, 676 (1985). The duty to disclose such information continues throughout the judicial process. *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997).

A *Brady* violation has three essential elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281-82 (1999)). Prejudice satisfying the third element exists "when the suppressed evidence is material for *Brady* purposes." *Id*. (internal quotations omitted).

Favorable evidence "is material . . . 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *Bagley*, 473 U.S. at 682).

Here, the Government had knowledge of Windecker's past history of violence and criminal convictions. The Government not only withheld the extent of the role of Windecker as an informant, but the Government also had Windecker posing in this role specifically to interrupt the First Amendment activities of a political movement and condoned if not sanctioned entrapment.