1        IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 21-cr-0227-WJM
3
UNITED STATES OF AMERICA,
4
Plaintiff,
5
vs.
6
ZEBBODIOS DeJUAN HALL,
7
Defendant.
8
------------------------------------------------------------
9
                  REPORTER'S TRANSCRIPT
10                      (Sentencing)
11
------------------------------------------------------------
12       Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 9:34 a.m., on the 7th day of

15   September, 2022, in Courtroom A801, United States

16   Courthouse, Denver, Colorado.

17
                       APPEARANCES
18
         DANIEL R. McINTYRE, Assistant U.S. Attorney, 1801
19   California Street, Suite 1600, Denver, Colorado 80202,
     appearing for the plaintiff.
20
         STEPHANIE M. SNYDER, Office of the Federal Public
21   Defender, 633 Seventeenth Street, Suite 1000, Denver,
     Colorado 80202, appearing for the defendant.
22
             MARY J. GEORGE, FCRR, CRR, RMR
23           901 19th Street, Denver, Colorado 80294
             Proceedings Reported by Mechanical Stenography
24              Transcription Produced via Computer

25

**Exhibit 3**

1                    P R O C E E D I N G S

2          (Call to order of the court at 9:34 a.m.)

3               THE COURT:  We're on the record in criminal case

4    No. 21 cr 227, the United States of America versus -- how do

5    you pronounce your first name?

6               THE DEFENDANT:  Zebbodios.

7               THE COURT:  Zebbodios DeJuan Hall.  I'll take

8    appearances of counsel.

9               MR. McINTYRE:  Good morning, Your Honor.  Daniel

10   McIntyre on behalf of the United States.

11              THE COURT:  Good morning.

12              MS. SNYDER:  Good morning, Your Honor.  Stephanie

13   Snyder on behalf of Mr. Hall, who joins me at counsel table

14   today.

15              THE COURT:  All right.  Good morning to the two of

16   you.

17              Probation officer please identify herself for the

18   record.

19              PROBATION OFFICER:  Good morning, Your Honor.

20   Meaghan Mills with probation.

21              THE COURT:  Ms. Mills, welcome.  Good morning.

22              All right, Mr. Hall, I'm going to ask you to stand

23   and turn and face my courtroom deputy who will administer

24   the oath to you.

25              COURTROOM DEPUTY:  Please raise your right hand.

**Exhibit 3**

1          (Defendant sworn in)

2               THE COURT:  You may have a seat.  The record

3     reflects that on the 18th of January of this year, pursuant

4     to a plea agreement he reached with the Government, Mr. Hall

5     entered a plea of guilty to and was convicted of the single

6     count in an information charging transfer of firearm to a

7     felon, in violation of 18 United States Code Section 922(d).

8     We're here for the sentencing of the defendant.

9               Counsel, can you briefly summarize your respective

10    sentencing recommendations.  Mr. McIntyre.

11              MR. McINTYRE:  Your Honor, I am in agreement with

12    the defense and the probation department that a probationary

13    sentencing is appropriate in this case.

14              THE COURT:  All right.  Thank you.  And of what

15    length?  Just so we get that on the record.

16              MR. McINTYRE:  Three years, Your Honor.

17              THE COURT:  All right.  Ms. Snyder.

18              MS. SNYDER:  Thank you, Your Honor.  And as we

19    articulated in our motion for a variance, we are also

20    seeking a probationary sentence in this case.  Given

21    Mr. Hall's sort of own engagement in rehabilitative

22    programming on his own, I would suggest that a period of no

23    more than a year is necessary.

24              THE COURT:  All right.  Thank you.

25              All right, with regard to objections to the report,

**Exhibit 3**

1    I note that no objections were filed by either the

2    Government or the defendant.  I find, therefore, that the

3    factual statements and guideline applications in the report

4    are adopted without objection as the Court's findings of

5    fact concerning sentencing.

6         Mr. McIntyre, is there an oral motion by the

7    Government to dismiss the indictment?

8         MR. McINTYRE:  Yes, Your Honor.

9         THE COURT:  All right.  All right, there being no

10   objection, the Government's oral motion is granted.  The

11   indictment in this case is dismissed with prejudice.

12        The probation officer has determined the

13   defendant's adjusted offense level to be 12, from which I

14   have determined that a two-level reduction for acceptance of

15   responsibility is to be made, resulting in a total offense

16   level of 12.  The probation officer has also determined the

17   defendant's Criminal History Category to be I, yielding an

18   advisory guideline sentencing range of 10 to 16 months, a

19   period of supervised release of one to three years, a fine

20   range of 5500 to $55,000, and a special assessment of $100.

21        Do counsel agree the Court has correctly calculated

22   the guideline range in this case?

23        MR. McINTYRE:  Yes, Your Honor.

24        MS. SNYDER:  We do, Your Honor.

25        THE COURT:  All right.  Thank you, counsel.

**Exhibit 3**

1          All right, at this time, I'll take up the

2     defendant's motion for a downward variant sentence of

3     probation of one year, filed at ECF 32.  Ms. Snyder, if

4     you'll take the lectern, I'll hear additional argument from

5     you.

6          MS. SNYDER:  Your Honor, we are asking that the

7     Court grant our motion for a variance in this case and to

8     impose a probationary sentence.  I think it is relatively

9     unusual that the Government and probation and I are all

10    before the Court making the same recommendation of the

11    Court.  And I do believe that the sentence that everyone

12    before Your Honor today is requesting is the one that best

13    comports with the requirements of 18 U.S.C. 3553(a).

14          THE COURT:  Well, you're not all in agreement on

15    the length.

16          MS. SNYDER:  The length.  Fair enough, Your Honor.

17    And I --

18          THE COURT:  Not an unimportant detail.

19          MS. SNYDER:  It is not an unimportant detail

20    certainly for Mr. Hall.  And if the Court wishes me to focus

21    really my argument on the length, I would just note a couple

22    of things.  Unlike many defendants that come before the

23    Court who are really in need of a lot of services, I think

24    Mr. Hall, to his credit, has engaged in those services

25    volitionally and of his own accord throughout his life.

**Exhibit 3**

6

1          He's connected to mental health treatment.  He's

2    been connected in the past to vocational treatment.  He has

3    a physical healthcare provider.  He has mental health care

4    clinicians.  He has already engaged in the services that the

5    Court I think would want, and certainly I know the

6    Government would want, Mr. Hall to continue to engage in.

7          I think the one component of a probationary period

8    that everyone believes is appropriate, and what I would

9    encourage the Court to do, is impose some measure of

10   community service in this case and give Mr. Hall an

11   appropriate opportunity to complete that.

12         But, ultimately, Your Honor, this is a gentleman

13   who has a good history of work over the past year that this

14   case has been pending.  He has a good history of compliance

15   with what the probation department has asked of him to do.

16   He has focused his life on trying to sort of move past the

17   events of two years ago that have brought him here.

18         He disassociated himself well before the inception

19   of this case, as the Court notes from the attachments to the

20   exhibits that -- the exhibits that we filed as attachments

21   to our motion.  Ultimately, Your Honor, I don't know that

22   this is a gentleman who needs a great deal or a lengthy

23   period of court intervention in his life.  Certainly we

24   believe that -- understand that the offense itself was

25   serious, but I think the very singular context in which it

**Exhibit 3**

1    occurs -- or in which it occurred makes it extraordinarily

2    unlikely, as well as Mr. Hall's otherwise law-abiding,

3    stable, productive life, make it extraordinarily unlikely to

4    recur.

5           I would suggest a modest period of probation.  We

6    suggested a year, Your Honor.  Again, I think it's up to the

7    Court ultimately to determine the length with the condition

8    that he continue to engage in mental health services, that

9    he continue to engage in productive employment activities,

10   that he cooperate with probation, we don't object to the

11   search condition, and that he complete a reasonable

12   measure -- or amount of community service to give back to

13   the community as appropriate in this case.

14          Respectfully we really don't believe that anything

15   more is warranted or necessary.  I would be happy to make

16   further arguments or other wise I'd simply rest on what we

17   articulated in our pleadings, Your Honor.

18          THE COURT:  There are a couple of things I'd like

19   you to address.

20          MS. SNYDER:  Yes, Your Honor.

21          THE COURT:  One, while it's true that I do give

22   weight to, and sometimes considerable weight to,

23   recommendations by the parties and the probation officer,

24   obviously, none of that is binding on me.  So you sort of

25   skipped over the -- I think the first preliminary primary

**Exhibit 3**

issue is:  Why is a period of incarceration not appropriate
in this case?

MS. SNYDER:  Sure, Your Honor.  And I think in
large part for someone who comes before the Court with no
felony record of any kind, the conviction itself and all of
the attendant consequences that come with that, we sort
of -- or I attempted to elaborate on a few of those in our
pleading; that that itself is a massive amount of
punishment.  It changes Mr. Hall's life forever.

For him, in particular, the experience of living
through this prosecution has been wrenching; it has been
grueling.  It has caused him an immense amount of anxiety
over the past several years.  And I believe that the fact of
a felony conviction provides certainly all of the specific
deterrence that would be necessary for Mr. Hall, but I think
it's also sufficient general deterrence in this case.

The Court knows from the presentence report a
little bit about the history and characteristics of
Mr. Hall.  I think they were fairly represented there.  In
short, this is --

THE COURT:  And plus from your very detailed
motion, which was helpful.  I mean, it's very helpful.

MS. SNYDER:  Well, I appreciate that, Your Honor.
And I -- what I think Mr. Hall's background is, is a man who
has really survived an immense amount of trauma and loss and

**Exhibit 3**

1   grief and sort of betrayal in his life.  And in his early

2   20s, he was in a very dark place.  And I think it's really

3   to his credit that he embraced the help that he needs -- or

4   needed to get himself out of that.  And I think the context

5   in which his arrest in this case, his prosecution in this

6   case, transpired is very significant in terms of why it's

7   appropriate to vary in this case.

8           This is a gentleman who has -- I think he has a

9   possession of marijuana, and otherwise they're all like "no

10  driver's license" from 2012.  I mean, very old data.  This

11  is not someone who's had a history of violence; not someone

12  who's had a history of the contact from the court.  He's

13  bought two guns in his entire life, the one at issue in this

14  case for the request of the confidential source for the

15  Government, and then the one he bought shortly after that,

16  in part because he was so freaked out about the confidential

17  source and that he couldn't get rid of fast enough when we

18  came in for his initial appearance in this case.

19          The events locally, nationally, in the spring of

20  2020 in the world has gotten a little bit back to normal

21  but -- and it seems almost impossible to remember just how

22  fraught those days were, but the world was shut down because

23  of the pandemic; the entire country watched the murder of

24  George Floyd.  I was -- had not moved to Colorado at this

25  point, but certainly the death of Elijah McClain caused a

**Exhibit 3**

great deal of concern in the community that I was in at that

time, and I can only imagine that it was here as well.

The confusing emotional, volatile, I think, mix of

players in this case, of personalities in this case, of

Mr. Hall's I think underlying vulnerabilities and

susceptibilities at that point in his life, the fact that he

actually suffered a mild TBI because he was concussed by a

stun grenade while he was taking pictures at an earlier

protest plays into this.

What Mr. Hall did in purchasing the gun at the

request of the CI was wrong.  We know that.  That's why he's

here.  But a felony conviction alone, I think, is sufficient

to punish that conduct, particularly when a -- you know,

almost a year before the Government sort of instituted

proceedings in this case, Mr. Hall's contacts with the CI

were -- he wasn't doing anything.  He was working, he was

staying out of trouble, and he's done the same for the last,

you know, year since this case has gone on.  He works.  He

takes care of his cat.  He's really into jujitsu.

He was telling me this morning he trains four or

five times a week to get his mental health and physical

health back in shape.  He goes to therapy.  He's taken

ownership of his own choices.  He takes responsibility for

being here.  But, Your Honor, respectfully, I believe

imposing a period of incarceration as the Government and as

**Exhibit 3**

1   probation recommend, is simply not necessary to accomplish

2   any of the goals of sentencing in this case.  This is a

3   gentleman who has a zero criminal history --

4          THE COURT:  I don't think the Government or

5   probation's recommending a period of incarceration.

6          MS. SNYDER:  They agree, and I think they are

7   correct in that.

8          THE COURT:  I thought you just said the Government

9   and probation are recommending a period of incarceration.

10          MS. SNYDER:  Oh, are not recommending.  My

11   apologies if I misspoke.  So no one is.  And I think it's

12   important -- and I think it's in part in recognition of the

13   fact that Mr. Hall didn't need this case to change the

14   trajectory of what he was doing.  That he did that on his

15   own without the inception of this case.

16          That Mr. Hall has a life prior to this incident

17   which is productive.  It has had its challenges, but he's

18   met them.  He's certainly never had this kind of moment

19   before a court here.  And it is in recognition of the fact

20   that for the last two years he's done exactly that.

21          I mean, this is a gentleman who, for better or for

22   worse, is largely I think a home body.  He's an IT tech guy

23   and, you know, goes to the gym.  That's basically what

24   Mr. Hall is doing on a daily basis.  He's not somebody who

25   needs, I don't believe, intensive supervision by the Court.

**Exhibit 3**

1          The fact of the felony conviction is going to

2    follow this gentleman for the rest of his life.  The

3    Government's objective in this case -- and Mr. McIntyre can

4    probably speak better to what the Government's intent

5    ultimately is -- but I think was really to make sure that he

6    would never be able to purchase another firearm.  That was

7    important as we discussed a resolution of this case.

8          He can't.  He won't.  He has no interest in doing

9    that.  This is not a gentleman who is a gun hobbyist, a gun

10   guy.  This is a gentleman who wants no part of that.

11         The guidelines, Your Honor, and as we outlined in

12   our pleading -- and I know I -- I believe I've had this

13   conversation with the Court in a separate case -- the

14   guidelines, I believe, particularly at the lower end of the

15   scale for people in Criminal History Category I for people

16   who have zero criminal history points.

17         When the guidelines were being created, the

18   exclusion of probationary sentences in terms of what the

19   average sentence would be artificially weights them towards

20   incarceration, particularly at the lower end of the scale

21   where this case is.  Before the guideline -- or the advent

22   of the guidelines, almost half of federal court sentencings

23   ended in probation.  I know that's much more rare today.

24   But I believe that this gentleman, this case, this factual

25   scenario with his history warrants that kind of disposition

**Exhibit 3**

1   today.

2           So we would ask that the Court impose a period of

3   probation.  We are asking that the Court make a requirement

4   that Mr. Hall perform community service is a central

5   component to that.  And we believe that that would be the

6   sanction that is sufficient but not greater than necessary

7   to accomplish justice in this case.

8           If the Court has further questions, I'm happy to

9   try --

10          THE COURT:  I do.

11          MS. SNYDER:  Of course.

12          THE COURT:  It's interesting to me that in large

13  part what your argument appears to be is that your client is

14  not a criminal in the sense of past extensive criminal

15  history, someone with a criminal mind, someone who is always

16  operating on that side of the law, but is someone who is --

17  has a job, has all these mental and other issues that he's

18  dealt with, and is dealing with.  But that the summer of

19  2020 came and all these events took place and he was swept

20  up in the fervor of the moment.

21          The concern I have with that is two-fold.  One is,

22  that's what a lot of the insurrectionists in their trials

23  are using as a defense.  And I just read an article last

24  week about the former police officer that was sentenced for

25  10 years incarceration for his role in the January 6th

**Exhibit 3**

1    insurrection.  And the argument there was this is a former

2    cop; he's never done anything like this before.  He was just

3    caught up in the -- in the moment.

4         So that makes me uncomfortable, because that makes

5    it sound like it's all a function of what are the macro

6    circumstances going on in the world and in the community at

7    the time.  And that if any point in the future we can have

8    that again, your client might go back to that space.

9         I can envision -- I mean, we hope that we don't

10   have another repeat of January 6th, 2021 in this country,

11   but a lot of the forces that were behind that are still just

12   percolating below the surface.  And depending on what

13   happens with the Department of Justice's investigation of

14   certain events and certain transportation of documents in

15   Florida, what happens there, what happens in the election in

16   2024, I could readily see all this happening again in a

17   different form, a different context, different issues

18   certainly.

19        And hopefully it won't be in part because of the

20   murder of a member of the minority community by law

21   enforcement, but I'm not as sanguine on the thought that the

22   stars -- the adverse or unfortunate stars won't get aligned

23   again, and will have another kind of situation of mass

24   protests.  And your client seems to be drawn by -- to those

25   events.  And then we might have that situation develop again

**Exhibit 3**

1    where he's swept up in that.

2            And having said all that, too -- so I'm concerned

3    about that and how similar it is, like I said, to the

4    defense of the insurrectionists.  Additionally, in some ways

5    that speaks to me in posing a lengthier probationary

6    sentence only because -- one way I will be thinking of it,

7    to get us on the other side of January 2025 where, depending

8    on who runs for office and what happens, I could see a lot

9    of the violence and confrontation happening again; so as to

10   capture the period of time where some of these chapters in

11   history might repeat themselves.

12           I know that was a lot in my statement.  It wasn't

13   all a question, a lot of it was a statement, but I'd like

14   your response.

15           MS. SNYDER:  Fair enough, Your Honor.  It's

16   interesting, one of the things that we -- you know, that I

17   was focused on early on in this case was, in fact,

18   comparisons with, you know, some of the cases that were

19   resolved with misdemeanors in the District of Columbia

20   court.  I think this case is different for a couple of

21   reasons.

22           One -- and I understand the Court's concern with

23   the longer leash, a longer period of supervision may have

24   some sort of beneficial effect.  I think this case is a

25   little different; one, because it's important -- and I think

**Exhibit 3**

1    it was important to the probation officer in her

2    recommendation, it is certainly important -- or, I would

3    suggest, should be similarly important for Your Honor in a

4    deep dive into what Mr. Hall actually did.

5         The gentleman who was sentenced in D.C. -- and,

6    again, I may have some of the details wrong, but as I

7    understood it actually forcefully assaulted police officers,

8    like put hands on.  And I don't know if he hit them with

9    something or if it was a -- that was a different case, but

10   engaged in actual violence.  Mr. Hall never did any of that.

11        Mr. Hall may have said things.  The Government's

12   informant said he may have said inflammatory things.  But he

13   himself never once -- there's never been any shred of

14   evidence in any of the material that was provided engaged in

15   any hands-on violence of his own.  And that's important.

16        The second thing is -- I mean, you know, these are

17   crazy times, certainly.  And there potentially are crazier

18   times awaiting us.  But the CI in this case I think is a --

19   an interesting gentleman.  We tried to give the Court in our

20   pleading a little bit of the background information we have

21   to --

22        THE COURT:  And thank you for the photo.  That

23   really --

24        MS. SNYDER:  It speaks a thousand words, Your

25   Honor.  It was a strange environment.  And why I think the

**Exhibit 3**

1    Court can have a little bit more confidence about Mr. Hall

2    than perhaps one of these sort of January 6th folks is one

3    of the things that I think has been a common theme in those

4    prosecutions is people sort of disavowing, you know, at the

5    time of their sentencing.

6         But the Court, again, when we're focused on

7    Mr. Hall's actions, has Mr. Hall's actions, well before

8    today, well before he's facing a judge and asking -- or

9    being sentenced for his conduct -- the Court has -- in

10   January of 2021 I think was the first contact.  "Hey, I'm

11   not going down there anymore.  This is too much for me."

12        July of 2021, right before Mr. Hall was indicted.

13   "Hey, I haven't been doing anything."  Those are his

14   contacts with the Government's informant for, you know, 18

15   months or almost two years now, and certainly within months

16   after the commission of the offense.

17        So I think two things to distinguish Mr. Hall's

18   situation from the Court's sort of articulated concerns:

19   One, he's never been violent; and, two, he disassociated

20   himself from this well before we got to court.

21        Your Honor, I agree that -- you know, someone, I

22   think -- people have said, you know, it was more interesting

23   to not live in historic times, right?  Like it was better to

24   not live through great world events.  We were certainly

25   living through them.  And the past couple of years have been

**Exhibit 3**

1    interesting and challenging on a variety of levels.

2            But I think Mr. Hall is in a wildly different place

3    mentally, even from when I first met him a year ago.  He has

4    really, I think, benefited from -- and, I mean, he will be

5    the first to tell you, the cessation of smoking marijuana,

6    that's made his mind sharper, and that has been a byproduct

7    of this case.  He's benefited from his sort of engagement in

8    regular jujitsu training.  I think that has helped develop a

9    little bit of confidence, a little bit of self-esteem away

10   from some of these other things.

11           I believe what brought Mr. Hall to Mr. Windecker,

12   to the -- to the Government's CI, to all of these people,

13   was really a desire to be relevant, important, et cetera.

14   And I think he's found other outlets for that now that

15   weren't necessarily the case when he wasn't working, when we

16   were in the pandemic, when everything was shut down, when

17   the world was kind of being turned on its head in the spring

18   of 2020.

19           So while I recognize the Court's concern.  And if

20   that leads the Court in a different direction from what

21   we're recommending, we understand that.  We would simply --

22   or my point simply would be, Your Honor, that I don't

23   believe jail or anything beyond a probationary sentence

24   would be necessary to essentially engender a deterrent

25   effect with regard to Mr. Hall.

**Exhibit 3**

1          THE COURT:  All right.  Thank you.  Appreciate

2     that.

3          Mr. McIntyre, I'll hear from the Government in

4     response.

5          MR. McINTYRE:  Would you like me to speak from the

6     podium, Your Honor?

7          THE COURT:  Yes, please.

8          MR. McINTYRE:  Your Honor, I think plenty of

9     Ms. Snyder's points are well taken.  I think this case is

10    unique in a lot of respects.  I have been before Your Honor

11    a lot.  I don't recall ever recommending or agreeing to a

12    probationary sentence on any of my cases.  And I think part

13    of that is because many, if not most, people who are

14    prosecuted for felonies in federal court tend to be worse

15    than average.

16         I think the Feds typically target people who are

17    more concerning, and those are people who, you know, have

18    worst criminal histories, commit worse crimes, things like

19    that.  But I think this case is different and is unique, and

20    I do agree with the defense that a sentence of incarceration

21    is not necessary with the facts of this case.

22         I do disagree with respect to the length of the

23    probationary sentence, if the Court is inclined to go along

24    with the parties.  I think the Court essentially hit the

25    nail on the head with its concerns about the argument that

**Exhibit 3**

1    he got caught up, that it was an aberration, that the CI was

2    a weird guy.  And that was actually the defendant's

3    argument, not the Court's.

4             THE COURT:  I don't think I used that word.

5             MR. McINTYRE:  Yeah.  But I think what the Court

6    has to remember is when this was going on prior to the

7    institution of this case, Mr. Hall was attracted to that.

8    He voluntarily associated himself with this weird guy,

9    knowing he was a weird guy.  He advocated for violence,

10   according to the reports.  He sought certain types of

11   military training.  He engaged in discussions about firearms

12   and ended up actually purchasing a firearm.

13            So I think there are real red flags here that

14   should give pause to the Court and give concern to the

15   Government which led to the prosecution.  So I think the --

16   again, the case is unique in that there does seem to be the

17   voluntary disassociation.  Mr. Hall seems to be on a much

18   better track now.  But the thrust of the defense argument

19   that he has these long-standing issues that were essentially

20   triggered by the excitement of the moment -- and I think the

21   Court's concern, you know, what can trigger it again -- is a

22   valid one.  And I think additional supervision is warranted.

23            I think a lot of the mitigation that the defense

24   has talked about, again, those points are well taken, but I

25   think those will get us from the recommended guideline range

**Exhibit 3**

1    or a sentence of incarceration down to probation.  But I

2    think, you know, a year is such a minimal period of

3    supervision for a serious felony offense that occurred in

4    these circumstances.  I just don't think it's sufficient.  I

5    don't think it's sufficient for Mr. Hall and I also don't

6    think it's sufficient to create the necessary deterrence and

7    achieve the other factors the Court needs to consider under

8    3553(a).

9            So I think a three-year period is -- it's not a

10   minimal sentence, but I think it's a minimal burden on

11   Mr. Hall for the benefit if gives the Court, for the ability

12   of the Court to supervise, provide services as necessary,

13   and ensure for that period of time that he stays on the path

14   that he appears to be on, which is great to see.

15           And, again, I think that's rare in federal court to

16   see someone who takes these steps on their own.  I think

17   that's -- that is a significant factor in this case.

18           THE COURT:  I agree.

19           MR. McINTYRE:  So with that, I recommend the three

20   years of probation.  And unless the Court has any specific

21   questions.

22           THE COURT:  No, I don't.  Thank you, Mr. McIntyre.

23           MR. McINTYRE:  Yeah.

24           THE COURT:  And, actually, I will agree with you:

25   It's significant that you are agreeing with the probationary

**Exhibit 3**

1    sentence because I don't recall you ever doing that before,

2    so that carries some weight with me.

3            MR. McINTYRE:  Just for the record, it's not

4    because I'm an unreasonable prosecutor, it's just because

5    this case is unique.

6            THE COURT:  I understand.  Ms. Snyder, I always

7    give a movant an opportunity for a very brief reply, if you

8    wish to take it.

9            MS. SNYDER:  No, Your Honor.  I think the Court has

10   the issues before it; we would rest on our prior arguments.

11           THE COURT:  Thank you, ma'am.  All right, let me

12   state for the record that Mr. Hall is 41 years old.  He is a

13   citizen of the United States; he was born in Texas.  And in

14   addition to Colorado, he has lived in California and

15   North Carolina throughout his life.  He was raised in an

16   upper middle-class family where all his basic needs were

17   met.  His father unfortunately was incarcerated for a period

18   of time while he was growing up and he was also,

19   unfortunately, emotionally and physically abused by his

20   mother over the course of many years during his upbringing.

21           As defense counsel has pointed out, Mr. Hall has

22   been afflicted by mental and physical illnesses for much of

23   his life.  In 2014 he was diagnosed with severe depression

24   and post-traumatic stress syndrome -- post-traumatic stress

25   disorder.  And he has attempted to take his life on three

**Exhibit 3**

1    different occasions.

2           The revised report summarizes in great detail the

3    difficulties of the defendant's life and I have, in

4    particular, considered the information the probation officer

5    has shared with me in the personal and family data and

6    mental and emotional health sections of her report.

7           The history -- this history and these

8    characteristics of the defendant also make up a large part

9    of the bases defense counsel relies upon in her motion as

10   support for her request for a noncustodial probationary

11   sentence.  With regard to the defendant's criminal history,

12   according to the revised report he has one juvenile criminal

13   adjudication; he's been assessed zero criminal history

14   points by the probation officer, placing him in Criminal

15   History Category I, and he is before me on his first ever

16   felony conviction.

17          For the record, the nature and circumstances of the

18   offense can be summarized briefly as follows:  The defendant

19   met a confidential source during various civil justice

20   protests in 2020.  Confidential source identified himself as

21   a convicted felon and asked Mr. Hall to purchase a firearm

22   for him, which the defendant agreed to do.

23          In August of 2020, the defendant purchased a Smith

24   & Wesson model SW 1911 Pro Series .45-caliber semi-automatic

25   pistol for the confidential source who then gave Mr. Hall

**Exhibit 3**

1    $200 to show him his appreciation.

2           Ms. Mills, do you wish to make any statement at

3    this time on behalf of the probation office?

4           PROBATION OFFICER:  Your Honor, in addition to

5    everything that has been discussed today, I think three

6    years is appropriate.  Mr. Hall does have prior periods of

7    instability, homelessness, unemployment.  And while he is

8    doing very well right now, I do think the additional support

9    of the probation department to ensure that he continues down

10   this path would be helpful for him.  And I think three

11   years, he could always request early termination after a

12   year.

13          THE COURT:  Right.  Thank you, ma'am.

14          All right, Mr. Hall, if you'll take the lectern,

15   please.  Do you wish to make any statement to the Court on

16   your own behalf before I announce your sentence?

17          THE DEFENDANT:  Sorry.  I guess thanks for being

18   here and -- I think -- yeah, I've made a lot of strides to

19   get better, but I think one of the best decisions I made was

20   probably starting jujitsu.  You know, I was kind of -- you

21   said I came from an upper middle-class family, so I won't

22   have to worry about money, but everyone talks about money

23   and not love.  And being in jujitsu, if I'm gone two days,

24   "Where are you at?  We're worried about you."

25          Someone actually loves me.  So, yeah, if I'm down

Exhibit 3

1    one day, you know, if I'm doing -- if I'm having one of my

2    worse days, I have to make myself go in because those are

3    the most important days.  I've had the privilege of training

4    with UFC fighters and if I'm having a problem, they say,

5    "Hey, what's going on?"

6         And I guess the humbleness that's come with it

7    is -- it will sound weird, but when you're training with

8    other human beings, and they have your best interests, and

9    you make a mistake and, you know, you tap out, they say,

10   "Hey, this is the mistake you made.  This is how we're going

11   to fix it."

12        And, you know, I've used it in tournaments that

13   I've been in.  And it just feels good that these people love

14   me.  So, yeah, I'm sorry that I'm -- I've never done this

15   before, but it just feels good to be loved.

16        THE COURT:  All right.  Thank you for that.  One of

17   the things that puzzles me about this case is that you

18   really have a very minimal history -- criminal history.  I

19   mean, you have -- I think there were two or three driving

20   without a driver's license citations, and your only other

21   actual criminal conviction was a misdemeanor conviction for

22   half an ounce -- less than half an ounce of marijuana over

23   15 years ago.

24        So you went through a very long stretch where you

25   had no issues -- no issues with respect to the law.  You of

**Exhibit 3**

1    course had the other issues going on in your life that we've

2    referenced in passing here today, but what all of a sudden

3    triggered this change in your actions that brought the

4    criminal justice system back into your life?

5              THE DEFENDANT:  Probably I can say just the lack of

6    self-love, and then just wanting to be wanted.

7              THE COURT:  So --

8              THE DEFENDANT:  So I --

9              THE COURT:  So how do you tie that to selling a

10   firearm -- did you want this -- the confidential source

11   informant --

12             THE DEFENDANT:  No.

13             THE COURT:  -- to love you; to have some affection

14   for you?  Is that what you're trying to do?

15             THE DEFENDANT:  So I'm just more so, I guess,

16   saying -- no, I -- sorry, I've never done this before.

17             THE COURT:  That's all right.  Everybody's nervous

18   when they're in your spot, so don't worry about that.  Take

19   your time.

20             THE DEFENDANT:  It's not more so to get love from

21   him.  I think, you know, when you kind of lack

22   self-confidence and self-love, you just kind of do.

23             And I know that might not make much sense, but, I

24   don't know.  It's not that I wanted him to love me, it's

25   just -- just alone.  Sorry, I don't know how to answer that.

**Exhibit 3**

1      THE COURT:  That's all right.  Also help me

2   understand why -- why it is that you did what you did?  I

3   mean, the reason that I'm asking this is, this is someone

4   you didn't really know.  You just got introduced -- just met

5   him.  He's a pretty scary looking fellow from that photo.

6      I don't know -- so, you know, it must have taken a

7   lot of guts, a lot of effort on your part, to go to a gun

8   store, purchase a -- such a large -- I mean .40-caliber

9   semi-automatic pistol, right?  That's a -- that's something

10  that can do a lot of damage.  Why did you buy that for him?

11     THE DEFENDANT:  When you just fear -- you know, I

12  kind of look back and I hate to agree with my mom, sometimes

13  you just do something.  You just -- you're just scared.  And

14  makes me think, you know, growing up, you're just scared.

15     THE COURT:  Did he intimidate you into buying it?

16  Were you scared of him if you didn't buy it for him?

17     THE DEFENDANT:  In some ways, yeah.

18     THE COURT:  All right.  Well, that's what I need to

19  know.  I'm just trying to understand what happened here.

20  It's a very unusual set of facts.

21     THE DEFENDANT:  I think let's fast-forward a little

22  bit.  But, you know, I think when you last saw me a year ago

23  I was a much bigger person.  And I guess it's like it

24  doesn't fit the narrative that a big person could be afraid

25  of someone.  And I think that's just something I dealt in my

**Exhibit 3**

1    entire life, you know.  You're so scared, you just do.  But

2    I don't have to be scared any more because there's people

3    that love me.  And if I have a problem, I can just talk to

4    them.

5            THE COURT:  All right.  Anything else you wish to

6    tell me, Mr. Hall?

7            THE DEFENDANT:  I don't think so.

8            THE COURT:  All right.  That's fine.  The two of

9    you can return to counsel table.

10           All right, I'm going to put on the record the

11   reasons for the sentence I'm going to impose on the

12   defendant.  I note that this is the defendant's first felony

13   conviction of any kind.  As I mentioned a few moments ago,

14   his only other criminal conviction in his life was for

15   possession of less than half an ounce of marijuana over 15

16   years ago.

17           I note that he personally, as his counsel has noted

18   a couple of times on the record, employed no violence or any

19   threat of violence in carrying out his crime.  I've taken

20   into account his difficult history and characteristics, the

21   difficult -- the difficult history and characteristics of

22   Mr. Hall's life.  As I mentioned before, his father was not

23   present during his childhood and his mother was emotionally

24   and physically abusive towards him.

25           During his childhood, unfortunately, he was also

**Exhibit 3**

1    sexually abused by a relative of a baby-sitter.  He has

2    struggled with mental illness for prolonged periods of time

3    and has attempted to take his life on three occasions.  Over

4    the years, he struggled with periods of unemployment and

5    homelessness.

6          According to the revised report, the defendant was

7    released on a $5,000 unsecured bond with no pretrial

8    supervision and in the over 13 months since then, he has had

9    no adverse issues or problems of any kind, so I've taken

10   that into account.

11         Also I've taken into account the probation

12   officer's view that Mr. Hall has complied with all court

13   orders, including having been fully compliant with the

14   presentence investigation process.  And, finally, I give

15   weight to the fact that in the probation -- in the plea

16   agreement, the Government agreed not to oppose the motion

17   for a probationary sentence and has, in fact, joined in that

18   request, albeit at a different length than requested by the

19   defendant.

20         So what I'm going to do is I'm going to grant the

21   motion in part.  I very much agree that incarceration is

22   absolutely not necessary in this case.  I am concerned about

23   what could happen in our country in the next couple of years

24   and whether the fervor and the heat of the moment may sweep

25   up the defendant again, so I'm going to impose a period of

**Exhibit 3**

1    probation of three years.

2              As Ms. Mills pointed out, at any time after one

3    year, defense counsel can make a motion to terminate the

4    three years of probation early if, depending on the facts of

5    the matter, on -- at that time, I will give it serious

6    consideration.  But at this time, because of the unique

7    nature of what happened here and how the unforeseeable

8    future events could again present a situation that might

9    motivate the defendant to engage in similar conduct in the

10   future, I think for now the best option for me is to impose

11   a three-year probationary sentence.

12             I'm also going to require, as a special condition

13   of probation, that the defendant perform 100 hours of

14   community service; those hundred hours to be performed

15   during the first 18 months of probation.  And I also intend

16   to waive the payment of any fine apart from the special

17   assessment of $100.

18             Before I actually impose sentence, I'll afford

19   counsel a final opportunity to make any record they believe

20   appropriate.  Mr. McIntyre.

21             MR. McINTYRE:  Nothing additional from the

22   Government, Your Honor.

23             THE COURT:  Thank you, sir --

24             MS. SNYDER:  Nothing from the defendant, Your

25   Honor.  Thank you.

**Exhibit 3**

1    THE COURT:  Thank you.  I'm going to ask the

2    defendant and defense counsel to stand for sentencing.

3    The plea agreement of the parties is accepted.  I

4    find that a guideline sentence in this case would be greater

5    than necessary to accomplish the goals of sentencing and I

6    will instead impose a sentence below the guideline range.

7    In addition, I find that the sentence that I will impose in

8    this case reflects the seriousness of the offense, affords

9    adequate deterrence to future criminal conduct, and will

10   protect the public from further crimes of this defendant.

11   Accordingly, pursuant to the Sentencing Reform Act

12   of 1984, it is the judgment of this Court that the

13   defendant, Zebbodios DeJuan Hall, be sentenced to a period

14   of probation for three years.

15   While on probation, the defendant shall not commit

16   another federal, state or local crime; shall not possess a

17   firearm as defined in 18 United States Codes Section 921;

18   and he shall comply with the standard conditions that have

19   been adopted by this Court in District of Colorado General

20   Order 2020-20.

21   The defendant shall not unlawfully possess and he

22   shall refrain from unlawfully using a controlled substance.

23   He will submit to one drug test within 15 days of release

24   from custody and a maximum of 20 tests per year of

25   supervision thereafter.  The Court finds that the following

**Exhibit 3**

1  special conditions of probation recommended by the probation

2  officer in her report are reasonably related to the factors

3  enumerated in Sections 3553(a) and 3583(d), they do not

4  constitute a greater deprivation of liberty than necessary,

5  and -- than reasonably necessary to accomplish the goals of

6  sentencing, and they will be included in the Court's

7  judgment, and those are special conditions 1 through 4.  And

8  special condition No. 4 already states the hundred hours of

9  community service within 18 months, which is what I am

10  ordering.  So we'll leave that -- those four special

11  conditions as recommended to me by the -- Ms. Mills in her

12  sentencing recommendation.

13          The defendant shall also pay a special assessment

14  of $100, which shall be due and payable immediately.  The

15  Court finds that the defendant does not have the ability to

16  pay a fine otherwise, and so the Court waives the payment of

17  any fine other than the special assessment.

18          Finally, Mr. Hall, I am advising you that pursuant

19  to the plea agreement you entered into in this case, you

20  waive the right to appeal your conviction as well as the

21  sentence I've just imposed except in very limited

22  circumstances.  To the extent you retained a right to file

23  an appeal, I'm advising you that should you wish to file

24  such an appeal, a notice of appeal must be filed with the

25  Clerk of the Court within 14 days after the entry of

**Exhibit 3**

1    judgment or the right to appeal will be lost.

2              If you're unable to afford an attorney for an

3    appeal, the Court will appoint one to represent you.  If you

4    are unable to afford the fees for filing an appeal, you may

5    file a request with the Court that such fees be waived.

6    Also I think I need to put on the record that the

7    defendant's bond is exonerated.

8              Anything further from the Government at this time?

9              MR. McINTYRE:  No, Your Honor.  Thank you.

10             THE COURT:  Thank you.  Anything further from the

11   defendant?

12             MS. SNYDER:  No, Your Honor.  Thank you very much.

13             THE COURT:  Thank you.  Anything further from the

14   probation officer?

15             PROBATION OFFICER:  No, Your Honor.  Thank you.

16             THE COURT:  Thank you.  All right, thank you,

17   folks, that will be all.

18        (Proceedings concluded at 10:17 a.m.)

19                  *     *     *     *     *

20                    REPORTER'S CERTIFICATE

21     I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
22     Dated at Denver, Colorado, this 10th day of July, 2023.

23

24

25
                    _____
                    MARY J. GEORGE, FCRR, CRR, RMR

**Exhibit 3**